*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GAVRIL MICLEA,

    Plaintiff,

and

MICHIGAN HEAD & SPINE INSTITUTE, P.C.,

    Intervening Plaintiff,

v

CHEROKEE INSURANCE COMPANY,

    Defendant-Appellee,

and

AUTO CLUB INSURANCE ASSOCIATION,

    Defendant-Appellant,

and

MICHIGAN ASSIGNED CLAIMS PLAN and
MICHIGAN AUTOMOBILE INSURANCE
PLACEMENT FACILITY,

    Defendants.

FOR PUBLICATION
September 17, 2020
9:15 a.m.

No. 344694
Wayne Circuit Court
LC No. 16-011913-NF

Before: RONAYNE KRAUSE, P.J., and K. F. KELLY and TUKEL, JJ.

RONAYNE KRAUSE, P.J.

    Defendant Auto Club Insurance Association (Auto Club) appeals as of right the stipulated judgment entered in favor of plaintiff Gavril Miclea. That stipulated judgment expressly permitted

-1-

Auto Club to appeal the trial court's previous order denying its motion for summary disposition and granting summary disposition to defendant Cherokee Insurance Company (Cherokee), holding that Auto Club was the highest-priority no-fault insurer for purposes of plaintiff's claim for personal protection insurance (PIP) benefits under Michigan's no-fault act, MCL 500.3101 *et seq*. On appeal, Auto Club argues that the trial court erred by concluding that it was the highest-priority no-fault insurer rather than Cherokee pursuant to MCL 500.3114(3). We agree. We therefore reverse the order granting summary disposition in favor of Cherokee and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff suffered injuries when he slipped and fell while trying to put antifreeze in his 2000 Volvo tractor (the truck). At the time, plaintiff was performing truck-driving services under an independent-contractor agreement with Universal Am-Can, Ltd (Universal). Plaintiff testified that he held legal title to the truck, and at the time of the accident, Universal was leasing the truck from him. Plaintiff maintained personal automobile insurance through Auto Club, and Universal maintained business automobile insurance through Cherokee. After unsuccessfully pursuing PIP benefits from Auto Club, Cherokee, and defendant Michigan Assigned Claims Plan, plaintiff filed this lawsuit, seeking a determination as to which insurer was highest in priority for purposes of his claim for PIP benefits. Intervening plaintiff Michigan Head & Spine Institute, P.C., one of plaintiff's healthcare providers, also filed an intervening complaint to recover benefits for the services it provided.

Cherokee moved for summary disposition under MCR 2.116(C)(10), arguing that, because plaintiff was an independent contractor at the time he suffered his injuries, his personal automobile insurer, Auto Club, was the highest-priority no-fault insurer pursuant to MCL 500.3114(1) and (3). In support of this position, Cherokee relied heavily on this Court's opinion in *Adanalic v Harco Nat Ins Co*, 309 Mich App 173; 870 NW2d 731 (2015), identifying *Adanalic* as the "controlling authority for independent contractor cases such as the case at bar." In response, Auto Club argued that it was entitled to summary disposition, claiming that Cherokee was the highest-priority no-fault insurer pursuant to MCL 500.3114(3) because, regardless of whether plaintiff was an independent contractor, plaintiff was an employee of himself and the owner of the truck. Auto Club contended that *Celina Mut Ins Co v Lake States Ins Co*, 452 Mich 84; 549 NW2d 834 (1996), and *Besic v Citizens Ins Co of the Midwest*, 290 Mich App 19; 800 NW2d 93 (2010), rather than *Adanalic*, controlled the outcome of this priority dispute.

The trial court relied on the economic reality test and determined that plaintiff was acting as an independent contractor at the time he sustained his injuries. The trial court therefore concluded that he was not an employee, so his personal insurer, Auto Club, was the no-fault insurer of highest priority. As a result, the trial court granted Cherokee's motion for summary disposition. Ostensibly, the instant appeal focuses on whether this case is controlled by *Adanalic* or by *Celina* and *Besic*. However, as will be discussed, we conclude that those three cases may be harmonized instead of shoehorning any of them to "control" over the others.

## II. STANDARD OF REVIEW

A trial court's decision to grant or deny summary disposition is reviewed de novo. *Ter Beek v City of Wyoming*, 495 Mich 1, 8; 846 NW2d 531 (2014). Summary disposition is

appropriate pursuant to MCR 2.116(C)(10) where there is "no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). When reviewing a motion for summary disposition under MCR 2.116(C)(10), the court considers the affidavits, pleadings, depositions, admissions, and other admissible documentary evidence then filed in the action or submitted by the parties. MCR 2.116(G)(4), (G)(5); *Puetz v Spectrum Health Hosps*, 324 Mich App 51, 68; 919 NW2d 439 (2018).

Michigan's appellate courts also review a trial court's interpretation and application of the no-fault act de novo. *Agnone v Home-Owners Ins Co*, 310 Mich App 522, 526; 871 NW2d 732 (2015). When interpreting and applying a statute, a court's primary goal is to ascertain and give effect to the Legislature's intent. *Frierson v W Am Ins Co*, 261 Mich App 732, 734; 683 NW2d 695 (2004). In doing so, courts look first to the language of the statute itself. *Id*. If the statute is clear and unambiguous, it must be enforced as written, and judicial construction is neither necessary nor permissible. *Id*. However, Michigan's appellate courts have recognized that "[t]erms contained in the no-fault act are read in the light of its legislative history and in the context of the no-fault act as a whole." *Id*. (citations and quotations omitted). Moreover, "[g]iven the remedial nature of the no-fault act, courts must liberally construe its provisions in favor of the persons who are its intended beneficiaries." *Id*. (quotation omitted). "Further, courts should not abandon common sense when construing a statute." *Id*. (quotation omitted).

### III. LEGAL BACKDROP

"Michigan's no-fault act generally abolishes tort liability arising from the ownership, maintenance, or use of a motor vehicle." *Grange Ins Co of Mich v Lawrence*, 494 Mich 475, 490; 835 NW2d 363 (2013). "Instead, insurance companies are required to provide first party insurance benefits for accidental bodily injury arising out of the use of a motor vehicle, which are commonly referred to as personal protection insurance (PIP) benefits." *Id*. "The basic purpose of no-fault is to ensure the compensation of persons injured in automobile accidents." *Hill v Aetna Life & Cas Co*, 79 Mich App 725, 728; 263 NW2d 27 (1977). Thus, in general, "PIP coverage applies to the insured person, and not to the motor vehicle." *Amerisure Ins Co v Coleman*, 274 Mich App 432, 438; 733 NW2d 93 (2007) (quotation omitted). It is possible for more than one insurer to be responsible for payment of benefits to a particular individual. However, persons are generally not entitled to a double recovery from multiple policies unless the person's injuries exceed policy limits. *Beaver v Auto-Owners Ins Co*, 93 Mich App 399, 401-403; 286 NW2d 884 (1979). In the event multiple insurers might be responsible, the relative priority of those insurers is determined by MCL 500.3114(1). *Corwin v DaimlerChrysler Ins*, 296 Mich App 242, 254-255; 819 NW2d 68 (2012). "[T]he general rule is that one looks to a person's own insurer for no-fault benefits unless one of the statutory exceptions, [MCL 500.3114(2), (3), and (5)], applies." *Parks v Detroit Auto Inter-Ins Exch*, 426 Mich 191, 202-203; 393 NW2d 833 (1986).

There is no dispute that Auto Club is plaintiff's "own insurer," so Auto Club is by default the insurer of first priority. There is also no dispute that Cherokee insured the motor vehicle at issue. Consequently, only one statutory exception could potentially apply:

> An employee, his or her spouse, or a relative of either domiciled in the same household, who suffers accidental bodily injury while an occupant of a motor vehicle owned or registered by the employer, shall receive personal protection

insurance benefits to which the employee is entitled from the insurer of the furnished vehicle. [MCL 500.3114(3).]

Pursuant to MCL 500.3101(3)(*l*)(i) and (iii), an "owner" of a motor vehicle can include either an entity leasing the vehicle or an entity holding legal title to the vehicle, or both.[1] Plaintiff, as the title holder, did not lose his status as an "owner" under the no-fault act by leasing it to Universal. See *Besic*, 290 Mich App at 21-22, 32. Consequently, both plaintiff and Universal were "owners" of the truck at the time of the injury. The outcome of this matter turns on whether plaintiff was an "employee" within the meaning of MCL 500.3114(3). The no-fault act does not expressly define "employer" or "employee."

## IV. ANALYSIS

This Court has long held that the economic-reality test provides the appropriate framework for determining whether an individual is an employee or an independent contractor under Michigan's no-fault act. See, e.g., *Parham v Preferred Risk Mut Ins Co*, 124 Mich App 618, 624; 335 NW2d 106 (1983). The trial court properly applied the economic reality test and determined that at the time of the injury, "plaintiff was operating as an independent contractor and not an employee." Auto Club does not challenge that finding. Cherokee thus argues generally that plaintiff simply cannot be an employee because he is an independent contractor. In contrast, Auto Club argues that plaintiff was nevertheless an "employee" for purposes of MCL 500.3114(3) because he was self-employed and occupying a vehicle that he owned at the time of his injuries. We agree with Auto Club.

As an initial matter, it is clear from context that the trial court only analyzed whether plaintiff was an independent contractor or employee of Universal. The trial court properly relied on the economic reality test to make that finding. However, the trial court erred in concluding that plaintiff, who was also an owner of the truck, was therefore not also an employee of himself. This Court has already resolved that issue under similar circumstances, albeit in an unpublished opinion signed by two members of this panel. Unpublished opinions of this Court are not binding. MCR 7.215(C)(1); MCR 7.215(J)(1). Nevertheless, unpublished opinions may be considered persuasive, especially where the unpublished case involves similar facts or where little published authority exists on point. See *Cox v Hartman*, 322 Mich App 292, 307-308; 911 NW2d 219 (2017). We find little published authority tending to resolve what we now believe is a troublesome and recurring issue: a superficial conflict between two cases from this Court and one case from our Supreme Court: *Celina*, *Besic*, and *Adanalic*. We have, however, harmonized those cases in a prior unpublished opinion.

Therefore, we now expressly reaffirm and adopt our prior resolution of this issue in *Sappington v Shoemake*, unpublished per curiam opinion of the Court of Appeals, issued October 30, 2018 (Docket No. 337994), as follows:

---

[1] We recognize that the word "leasing" could, in the absence of further context, be construed as referring either to the lessor or the lessee. When the statute is read as a whole, however, it clearly refers to a lessee.

Our Supreme Court has unambiguously established that a person can simultaneously be both an employer and an employee under the no-fault act. *Celina*[], 452 Mich [at] 87-90[]. In particular, someone who is self-employed is an employee of himself. *Id*. This Court further explained that a person can be a self-employed independent contractor and retain the status of both employer and employee. *Besic*, 290 Mich App at 31-32. Both cases are holdings as a matter of law: if a person is self-employed, that person is necessarily both employer and employee for purposes of MCL 500.3114(3). Therefore, if [plaintiff] is an independent contractor of [Universal], then [plaintiff] is necessarily an employee of himself.

Cherokee correctly observes that "[a]n independent contractor is not considered an 'employee' for purposes of the no-fault act." *Adanalic*[], 309 Mich App [at] 191[]. However, *Adanalic* clearly addressed only whether a person could simultaneously be an employee and an independent contractor of the same entity at the same time. Furthermore, *Adanalic* is consistent with *Celina* and *Besic*. In the latter cases, the injured parties owned the vehicles in which they were injured. *Celina*, 452 Mich at 86; *Besic*, 290 Mich App at 21. In *Adanalic*, the injured party owned a truck, but his injuries involved his occupancy of a semi-trailer that he did not own. *Adanalic*, 309 Mich App at 177-178. In all three cases, the courts were called upon to determine whether an owner of the occupied vehicle employed the injured party. Because the injured party in *Adanalic* did not own the vehicle in which he was injured, his self-employment status was irrelevant.

If [plaintiff] was an independent contractor of [Universal], *Adanalic* only establishes that [plaintiff] was not an employee of [Universal]. Binding case law rejects Cherokee's argument that [plaintiff]'s status as an independent contractor necessarily precludes him from being an employee of *anyone*. [*Id*., unpub at 3-4 (emphasis in original).]

As we discussed in *Sappington* above, all three cases operate in perfect harmony. Therefore, we reject Cherokee's argument that an independent contractor of one entity cannot simultaneously be an employee of another entity, including himself.

We additionally observe that Cherokee's argument would seemingly result in the curious conclusion that an independent contractor is somehow unemployed; because, at least in some contexts, being an "independent contractor" means that one is self-employed.[2] Furthermore, it appears to us that the Legislature intended, by enacting MCL 500.3114(3), to shift the burden of providing PIP benefits to the insurers of vehicles in certain commercial contexts, probably because those insurers will be in a better position to evaluate the risks against which they are insuring. See *Celina*, 452 Mich at 89. We may not depart from the literal language of an unambiguous statute,

---

[2] For example, the Internal Revenue Service takes the position that being an independent contractor means that one is self-employed. See < https://www.irs.gov/businesses/small-businesses-self-employed/independent-contractor-defined >.

but if any construction is necessary—such as determining the meaning of an undefined word—we should strive "to prevent absurd results, injustice, or prejudice to the public interest." *Rafferty v Markovitz*, 461 Mich 265, 270; 602 NW2d 367 (1999); see also *Frierson*, 261 Mich App at 734. If the case law had left any doubt, we would therefore resolve that doubt in favor of deeming the insurer of the commercial vehicle to have a higher priority.

## V. CONCLUSION

As we concluded in *Sappington*, there is no need to determine which of *Celina*, *Besic*, and *Adanalic* "controls" over the others, because all three cases can be harmonized. A person cannot be an employee and independent contractor of the same entity at the same time. However, being an independent contractor of one entity does not preclude a person from simultaneously being an employee of another entity, which can include one's self.[3] On these facts, plaintiff was not an employee of Universal, but he was an employee of himself. Because plaintiff also "owned" the vehicle, MCL 500.3114(3) applies. Because Cherokee insured the vehicle, it is the insurer of highest priority. The trial court's order denying summary disposition to Auto Club and granting summary disposition in favor of Cherokee is reversed, and the matter is remanded for any further proceedings the trial court deems necessary or proper. We do not retain jurisdiction. Auto Club, being the prevailing party, may tax costs. MCR 7.219(A).

/s/ Amy Ronayne Krause
/s/ Jonathan Tukel

---

[3] See footnote 2.